OPINION
Appellant, Kenneth D. Reed, II, was indicted by the Franklin County Grand Jury on one count of aggravated possession of drugs with a major drug offender specification in violation of R.C. 2925.11. The indictment alleged that, on January 7, 1999, appellant possessed 300.2 grams of amphetamine, a Schedule II substance. Pursuant to R.C. 2925.01(D)(1)(g), the bulk amount of this drug is three grams.
Appellant waived his right to a jury trial, and the only issue before the court was the weight of the drugs. The parties entered a stipulation that appellant possessed amphetamine in excess of fifty times the bulk amount at the time of the offense.
Michelle Anderson, a forensic scientist in the chemistry section of the Ohio Bureau of Criminal Identification ("BCI") testified for the state. According to her testimony, she was given eleven plastic bags containing an off-white solid substance and powder and was asked to analyze the contents. Ms. Anderson opened each of the eleven plastic bags, removed the off-white solid substance, weighed the off-white substance, and then took samples from each bag for testing to identify the substance. According to her testimony, three separate tests were run on the substance found in each of the eleven bags. Ms. Anderson testified that the weight of the off-white solid substance prior to her removing a certain amount to use for the testing was 300.2 grams. Ms. Anderson testified that she did not weigh the amounts which she took to perform the tests and that the amount taken to perform the tests was consumed as part of the testing. Ms. Anderson testified that she performed the tests to industry standards and conducted a total of thirty-three tests altogether. The scale used by the BCI is an OHAUS 1792, electron calibration scale. According to Ms. Anderson, the scales are calibrated once a year by Mettler. The last time the scales were calibrated by Mettler was December 15, 1998. Ms. Anderson testified that the people at BCI perform an in-house recalibration every three months. The tests were performed on February 22, 1999.
On May 3, 2000, approximately seventeen months after the drugs were originally confiscated and approximately sixteen months after BCI analyzed the drugs, appellant filed a notice requesting to have an independent analyst analyze the drugs. Benjamin Corpus, the technical/marketing manager for Toxicology Associates, testified that an unidentified former employee of his laboratory weighed and analyzed the substance and found 299.4 grams of amphetamine. Mr. Corpus testified that the police permitted him to remove the substance from only one of the eleven bags. That one bag was weighed empty and found to weigh 1.5 grams. All eleven bags were weighed, after which the weight of the bags, approximately 16.5 grams (1.5 grams times 11 bags), was subtracted from the total weight. Mr. Corpus testified that the test which was performed on the substance was a gas chromatograph mass spectrometry test. With that test, Mr. Corpus testified that only .10 grams or less of the substance is consumed by the test. When asked if he knew how much of the substance would be needed to run the tests utilized by BCI, Mr. Corpus indicated that he did not know. Mr. Corpus testified that the scale used by his company was a Sartorius Digital Balancer electronic scale. Although he testified that he was not an expert on this scale, he stated that, according to the manufacturer's specifications, the deviation is plus or minus .1 grams. He further testified that the scale is sent out for recalibration each month; however, he failed to bring those records with him, although the state had requested that he do so.
At the conclusion of the testimony, the court found that the prosecution had proved beyond a reasonable doubt that the weight of the drugs exceeded 300 grams and, thus, appellant fell into the category of a major drug offender. Following a presentence investigation, and after giving counsel an opportunity to speak on behalf of appellant and after addressing appellant personally, the court sentenced appellant to a mandatory term of imprisonment of ten years, pursuant to R.C. 2929.13(F), and ordered that no fine be issued.
Appellant filed a notice of appeal with the court on February 23, 2001, and sets forth the following two assignments of error for this court's consideration:
 [1.] THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT ON THE MAJOR DRUG OFFENDER ALLEGATION HOLDING THAT THE CONTROLLED SUBSTANCE WEIGHED 300 GRAMS OR MORE WHEN THE EVIDENCE PRESENTED ON BEHALF OF THE STATE WAS INSUFFICIENT TO SUSTAIN THIS FINDING BY PROOF BEYOND A REASONABLE DOUBT AND THIS FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED ON THIS ISSUE.
 [2.] THE DEFENDANT DID NOT RECEIVE A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO FILE A MOTION TO SUPPRESS OR DISMISS DUE TO THE STATE'S DESTRUCTION OF EVIDENCE AND ALSO BECAUSE OF PROSECUTORIAL MISCONDUCT INVOLVING THE MATERIAL MISSTATEMENT OF EVIDENCE.
In his first assignment of error, appellant contends that the trial court erred when it entered judgment against him on the major drug offender allegation finding that the controlled substance exceeded 300 grams, when the evidence presented was insufficient to sustain this finding by proof beyond a reasonable doubt, and that this finding was against the manifest weight of the evidence.
R.C. 2925.11 provides, in pertinent part, as follows:
 (A) No person shall knowingly obtain, possess, or use a controlled substance.
* * *
 (C) Whoever violates division (A) of this section is guilty of one of the following:
 (1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule * * * II * * * whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:
* * *
 (e) If the amount of the drug involved exceeds one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code.
Pursuant to R.C. 2925.01(D)(1)(g), the "bulk amount" of a Schedule II stimulant is defined as three grams if it is not in a final dosage form manufactured by an authorized person. Because the BCI weighed the substance at 300.2 grams, the indictment contained a major drug offender specification alleging that appellant possessed at least one hundred times the bulk amount of amphetamine.
In order to reverse a conviction because of insufficient evidence, an appellate court, after reviewing the evidence in a light most favorable to the prosecution, must determine, as a matter of law, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The appellate court may not resolve evidentiary conflicts in a defendant's favor, nor substitute its assessment of the credibility of the witnesses for that of the trier of fact.
In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In considering a manifest weight argument, a reviewing court is required to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Issues of witness credibility and the weight to attach to specific testimony still remain primarily within the province of the trier of fact, whose opportunity to make those assessments is superior to that of the reviewing court. State v. DeHass (1967), 10 Ohio St.2d 230,231. Nevertheless, the appellate court must review the entire record and, after according deference to the role of the trier of fact, the reviewing court must weigh the evidence and all reasonable inferences and consider the credibility of witnesses to determine whether the trier of fact clearly lost its way, creating a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction.
Appellant argues that there was conflicting evidence presented with respect to the weight of the controlled substance seized from him. Appellant contends that the state failed to prove beyond a reasonable doubt that the substance weighed 300 grams or more, specifically due to the "totally inadequate and unreliable procedures employed by the state during the weighing process." (Appellant's brief at 7.) Part of appellant's argument is that, since the state alleged that the substance weighed only .2 grams in excess of 300 grams, that excess is such a small amount that it could be explained away based upon the average deviation of the scales used at BCI. Further, appellant contends that he was deprived his absolute right to have his analyst present when the substance was weighed by the BCI and that the state cannot use the weight of the substance consumed by its own testing as part of the total weight of the substance when the defendant did not have the opportunity to be present when the substance was initially weighed. For the reasons that follow, this court disagrees.
R.C. 2925.51 provides, in pertinent part, as follows:
 (A) In any criminal prosecution for a violation of this chapter * * * a laboratory report from the bureau of criminal identification and investigation * * * and signed by the person performing the analysis, stating that the substance which is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identify of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance.
 * * * The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.
 (B) The prosecuting attorney shall serve a copy of the report on the attorney of record for the accused * * * prior to any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury proceeding * * *[.]
 (C) The report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or his attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or his attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice.
* * *
 (E) Any person who is accused of a violation of this chapter * * * is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is the basis of the alleged violation preserved for the benefit of independent analysis performed by a laboratory analyst employed by the accused person * * *. Such portion shall be a representative sample of the entire substance that is the basis of the alleged violation and shall be of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance. * * *
 (F) In addition to the rights provided under division (E) of this section, any person who is accused of a violation of this chapter * * * that involves a bulk amount of a controlled substance, or any multiple thereof, or who is accused of a violation of section 2925.11 of the Revised Code * * * is entitled, upon written request made to the prosecuting attorney, to have a laboratory analyst of his choice, or, if the accused is indigent, a qualified laboratory analyst appointed by the court present at a measurement or weighing of the substance that is the basis of the alleged violation. Also, the accused person is entitled, upon further written request, to receive copies of all recorded scientific data that result from the measurement or weighing and that can be used by an analyst in arriving at conclusions, findings, or opinions concerning the weight, volume, or number of unit doses of the substance subject to the measurement or weighing.
As indicated above, the laboratory report prepared by Ms. Anderson at the BCI constitutes prima facie evidence that appellant had 300.2 grams of amphetamine confiscated from him on January 7, 1999. R.C. 2925.51(E) provides that, upon request, a defendant is entitled to have a portion of the substance preserved for the benefit of an independent analysis to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance. Nothing in subsection (E) addresses the defendant's right to an independent weighing of the substance. In the present case, upon appellant's request, the state did turn over the substance to appellant, and appellant had the substance weighed and analyzed by Mr. Corpus at Toxicology Associates.
Appellant directs the court's attention to R.C. 2925.51(F) and asserts that he had a right to have a laboratory analyst of his choice present at the time that the BCI weighed the substance in the first instance. Upon a closer reading of that subsection, it is apparent that, if appellant would have made a written request to the prosecuting attorney prior to February 22, 1999, when the substance was weighed by Ms. Anderson at the BCI, then appellant would have had the right to have an analyst of his choice present when the substance was weighed. However, upon review of the record, there is no evidence indicating that appellant made such a request. Appellant was arrested on January 7, 1999, and the drugs were analyzed at the BCI on February 22, 1999. Appellant had approximately six weeks to make such request between the time the drugs were confiscated during his arrest and the time those drugs were weighed and analyzed by the BCI. In the absence of such a request, the state was permitted to weigh the substance without appellant having an analyst present. As such, appellant's contention that he was deprived of his constitutional right to have an analyst present when the substance was originally weighed is not well-taken.
In the present case, the state presented the analyst's report from the BCI indicating that the substance weighed 300.2 grams. That report constituted prima facie evidence that appellant had 300.2 grams of amphetamine. At trial, appellant presented rebuttal evidence indicating that, seventeen months later, the substance weighed 299.4 grams. Appellant also presented testimony from Mr. Corpus that only a small amount of the substance was required for testing. The state presented further evidence indicating that, while Mr. Corpus ran only one test on the substance, the state ran a total of thirty-three tests on the substance. Further, Mr. Corpus did not know how much of the substance would have been consumed by the state's tests. As such, the trial court had before it conflicting evidence. After reviewing all of the evidence in a light most favorable to the prosecution, this court cannot determine, as a matter of law, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Further, after engaging in a limited weighing of the evidence, this court concludes that there is enough competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. As such, appellant's first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant argues that he was denied effective assistance of counsel. Specifically, appellant argues that his trial counsel should have filed a motion to suppress or dismiss due to the state's destruction of the evidence.
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court established a two-prong analysis for determining whether counsel's assistance was so defective as to require a reversal of conviction:
 * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. [Id. at 687.]
The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied upon as having produced a just result. The proper standard of attorney performance is that of reasonably effective assistance. When a convicted defendant complains of the ineffectiveness of his counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. A defendant carries the burden of showing that counsel's deficient performance prejudiced his trial. Id. at 687-699. The burden is met where the reviewing court finds, given the totality of the evidence, that, but for counsel's errors, the verdict would reasonably have been different. Id. at 691-696.
The substance of appellant's argument that his trial counsel was ineffective focuses on the allegation that counsel should have filed a motion to suppress the evidence or dismiss the case entirely because the state was permitted to use the weight of the entire substance collected, including that portion which the state destroyed when it conducted its test, as proof that he possessed 300.2 grams of amphetamine. This court disagrees. As stated previously, pursuant to R.C. 2925.51(F), appellant was entitled, upon written request made to the prosecuting attorney, to have a laboratory analyst of his choice present during the measurement or weighing of the substance that is the basis of the alleged violation. Appellant was arrested on January 7, 1999, and the state did not weigh and analyze the substance confiscated from him until February 22, 1999. Based upon a review of the record, this court cannot determine when appellant sought and retained counsel. Further, there is no indication from the record that appellant made a written request to the prosecutor to be present when the substance was weighed.
Furthermore, appellant points to no authority which would convince this court that the state cannot use as evidence the total weight of the substance confiscated as weighed prior to conducting the analysis. Appellant possessed eleven bags containing an off-white solid substance. Ms. Anderson weighed the solid substance contained in each bag. Ms. Anderson then conducted three separate tests on each sample from each bag confiscated from appellant to ensure that each bag actually contained amphetamines. Prior to the state's analysis of the substance in the bags, appellant could not be indicted with any offense because the state would not know whether appellant actually possessed an illegal substance. Nothing in the statute requires the state to only use as evidence that substance which remains after the state performs its required analysis. Because there are no grounds for appellant's argument, counsel's failure to file a motion to dismiss or suppress evidence on those grounds would have been frivolous and would have been denied by the court. As such, this cannot constitute grounds to find ineffective assistance of trial counsel.
Appellant also contends that the conviction on the major drug offender element should be reversed on grounds of prosecutorial misconduct. Appellant points to what he contends is a lack of evidence presented by the state as to the accuracy of the scales used at the BCI. He contends that the prosecutor argued in closing arguments that the total weight of the substance could not have been under the 300.2 grams by more than .11 of a gram.
The test for reversing on grounds of prosecutorial misconduct is whether the accused suffered material prejudice. Jenks, supra, at 281. Upon review of the entire record, this court finds that there was no prosecutorial misconduct. While it is true that Ms. Anderson was not able to testify concerning the potential deviation of the scales utilized by the BCI, she did testify that, although the scales weighed the substance to the nearest hundredth of a gram, it is the policy of the BCI to drop that hundredth digit and only note the weight to the tenth place. For example, if a substance weighed 10.12, the analyst at the BCI would note that it weighed 10.1 grams. If the substance weighed 10.19 grams, the analyst at the BCI would still indicate that it weighed 10.1 grams. Given that scenario, it is obvious that the weight reported by BCI could have actually been greater than 300.2 grams. Especially since this case was tried before a judge and not a jury, the possibility that the prosecutor misunderstood part of what she was arguing does not rise to the level of material prejudice, as appellant would have this court believe. Appellant simply has not demonstrated that this case should be reversed on grounds of prosecutorial misconduct. Therefore, appellant's second assignment of error is not well-taken and is overruled.
Based on the foregoing, both of appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BOWMAN and LAZARUS, JJ., concur.